In re Tyrone HURT, Appellant.

No. 80–177.

District of Columbia Court of Appeals.

Argued June 25, 1981.

Decided Dec. 2, 1981.

W. Anthony Fitch, Public Defender Service, Washington, D. C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D. C., was on the brief, for appellant. Mady Gilson and Randy I. Bellows, Public Defender Service, Washington, D. C., also entered appearances for appellant.

Ann O'Regan Keary, Staff Atty., Office of Legal Advisor, Saint Elizabeths Hospital, Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and William J. Birney, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, NEBEKER and MACK, Associate Judges.

KELLY, Associate Judge:

Appellant, a convicted felon, serving a sentence of twenty years to life, was sent to St. Elizabeths Hospital to receive care and treatment for mental illness. In this appeal, he challenges a decision to transfer him back to the Lorton Correctional Complex. We hold appellant's rights were not violated by his retransfer, and the procedure by which such action was taken fully satisfied the requirements of the applicable statute and the Constitution.

I

Appellant began serving his sentence at the Lorton Correctional Complex in 1972.[1] On September 6, 1974, he was admitted to St. Elizabeths Hospital,[2] where he was diagnosed as "schizophrenic, chronic undifferentiated type." Although he was discharged from St. Elizabeths, and re-

---

1. Appellant was indicted on charges of first-degree murder, D.C.Code 1973, § 22–2401, and carrying a concealed weapon, D.C.Code 1973, § 22–3204, arising out of an incident which occurred in September 1971. After a jury trial at which he unsuccessfully asserted a self-defense defense, appellant was convicted and sentenced to concurrent terms of twenty years to life for the murder and one year for the weapons offense. We affirmed the convictions in *Hurt v. United States*, D.C.App., 337 A.2d 215 (1975). The earliest date on which appellant will be eligible for parole is November 2, 1992.

2. Under D.C.Code 1973, § 24–302:

   Any person while serving sentence of any court of the District of Columbia for crime, in a District of Columbia penal institution, and who, in the opinion of the Director of the Department of Corrections of the District of Columbia, is mentally ill, shall be referred by such Director to the psychiatrist functioning under section 24–106, and if such psychiatrist certifies that the person is mentally ill, this shall be sufficient to authorize the Director to transfer such person to a hospital for the mentally ill to receive care and treat-

ment during the continuance of his mental illness.

In *Matthews v. Hardy*, 137 U.S.App.D.C. 39, 420 F.2d 607 (1969), *cert. denied*, 397 U.S. 1010, 90 S.Ct. 1231, 25 L.Ed.2d 423 (1970), the circuit court held the equal protection clause required that the same procedural protections granted under the 1964 Hospitalization of the Mentally Ill Act, D.C.Code 1973, § 21–501 *et seq.*, to persons civilly committed to St. Elizabeths must also be afforded to prisoners whom the Department of Corrections seeks to hospitalize under § 24–302. Therefore, a prisoner is entitled to notice, a judicial hearing, and, if requested, a jury trial before he can be involuntarily transferred. *Id.* at 44, 420 F.2d at 612. The Supreme Court has since held that the involuntary transfer of a state prisoner to a mental hospital without notice and an adversary hearing is a violation of the due process clause of the Fourteenth Amendment. *Vitek v. Jones*, 445 U.S. 480, 98 S.Ct. 2276, 56 L.Ed.2d 381 (1980). A prisoner might not object to being transferred to St. Elizabeths for treatment of a mental disorder. This was the case with appellant, who characterized his committal as "voluntary."

turned to Lorton on April 2, 1975, he continued to receive 300 milligrams of Thorazine daily.[3] Appellant was admitted to St. Elizabeths for the second time on December 19, 1975. During that stay at the hospital he was diagnosed as suffering from "schizophrenia, paranoid type." In December of 1976, appellant was discharged from the hospital, and again transferred back to Lorton.

Unfortunately, while at Lorton, appellant's mental condition severely deteriorated. Upon the recommendation of a prison psychologist,[4] appellant was transferred on August 18, 1977, to the D. C. Jail, where he was examined by Dr. Thomas Mould of the Superior Court's Forensic Psychiatry Branch. Although appellant was still receiving Thorazine at Lorton, Dr. Mould's recommendation was that he be sent to St. Elizabeths to receive more extensive care. The Department of Corrections then petitioned to again have appellant transferred to the hospital. The petition was granted by the Honorable Leonard Braman of the Superior Court. At the request of the Department (through the Corporation Counsel), in his order, of September 6, 1977, Judge Braman directed that appellant not be returned to the custody of the Department of Corrections without there first being a hearing in the Superior Court. St. Elizabeths (through the United States Attorney) sought reconsideration of that part of the order, contending there is no basis for requiring a hearing before returning a prisoner to the custody of the Department of Corrections.[5] The motion for reconsideration was denied on November 28, 1977, and no appeal was taken to this court.

By letter of July 25, 1979, the Superintendent of St. Elizabeths informed the Mental Health Clerk of the Superior Court that

It has been determined that [appellant] has sufficiently recovered so as not to be in need of further care and treatment in a hospital for mental disorders. He currently receives Thorazine, 100 milligrams three times a day, and we recommend that the patient continue to receive the medication upon his return to the Lorton Correctional Complex....

The Superintendent requested that the hearing mandated by Judge Braman's order of September 6, 1977, be scheduled so as to facilitate the prompt return of appellant to the Lorton Correctional Complex.

The hearing was held before the Honorable Richard R. Atkinson on October 30, 1979.[6] The court heard testimony from two expert witnesses called by appellant, Drs. Mould and Randle. The court found, based upon their testimony, that over the previous year appellant had displayed no evidence of psychoses, and that the disease from which he suffered, schizophrenia, paranoid type, was in remission. The court's findings included the recommendation of the experts that the Thorazine treatment, which appellant was then receiving, should be continued after his discharge from St. Elizabeths, and that it could be administered at the Psychiatric Clinic located in the Lorton Correctional Complex. The court acknowledged that on two previous occasions appellant had been returned to Lorton, only to have his condition deteriorate such that further hospitalization was required. However, the court noted that had been before the establishment of the Psychiatric Clinic at the Lorton Complex, where appellant

---

3. Thorazine, which is the trade name for Chlorpromazine, is a tranquilizer used for the management of manifestations of psychotic disorders. Physicians Desk Reference at 11691 (35th ed. 1981).

4. Appellant was described by the prison psychologist as "... delusional and suicidal ... he has lost practically all contact with reality, is emaciated, unwashed and unkempt. He

presents a danger to himself and to others. He refuses medication...."

5. The procedure for committing prisoners to St. Elizabeths is set out in Super.Ct.Ment.H.R. 9. The rules do not provide for a hearing before transferring a prisoner from St. Elizabeths to the Department of Corrections.

6. In the meantime a new letter tracking the language of the statute was sent to the court: i.

could receive more extensive attention.[7] The court finally determined the burden of proof rested on appellant to show his need for continued confinement at St. Elizabeths and that the burden must be met by clear and convincing evidence that he would be dangerous or disruptive to the prison routine due to his mental illness. The court recognized that appellant's present stable condition was dependent upon his continued use of Thorazine. Nevertheless, the court found he was "restored to mental health" and no longer in need of treatment in a psychiatric hospital. Therefore, the court ordered appellant returned to the custody of the Department of Corrections, pursuant to D.C.Code 1973, § 24–303(b).

## II

Appellant challenges the retransfer order on the ground he has a constitutionally based right to treatment, and that the government cannot deprive him of that right without due process of law. Appellant argues that the requirement that he shoulder the burden of proof at the hearing, by a standard of clear and convincing evidence, constituted a violation of the due process clause of the Fifth Amendment.

We begin our analysis by determining the nature of appellant's interest. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). According to appellant, the interest at stake in the proceeding before Judge Atkinson was nothing less than his right to treatment for the mental illness for which he had been transferred to St. Elizabeths.[8] We disagree. The record makes plain the fact that appellant would continue to receive treatment in the form of daily dosages of Thorazine while at the Lorton Correctional Complex, and that he would be under the care of mental health professionals at that facility. What is therefore actually at stake is only the locus of treatment.[9]

■ With the question before us thus presented, we cannot accept appellant's contention that the opportunity for a hearing which he was afforded was any less than he is entitled to under the Constitution or the pertinent statute.[10] We do not consider appellant's claim that he is entitled to have the treatment which he is presently receiving to maintain his illness in a state of remission at St. Elizabeths, rather than at the Lorton Correctional Complex, despite

e., appellant "had been restored to mental health."

7. Dr. Randle, testifying at the hearing, stated that in August 1977, a clinic was established at the Lorton facility to provide follow-up care for individuals transferred back to the Department of Corrections from St. Elizabeths, as well as mental health care for the general prison population. According to Dr. Randle, when appellant is returned to Lorton he will be seen by a doctor at the clinic who will review his history and reports from St. Elizabeths. Personnel at the facility will insure that appellant continues to receive his medication, and he will be seen periodically by doctors for as long as he remains on medication.

8. The Supreme Court has acknowledged that deliberate indifference to serious medical needs of prisoners constitutes a violation of the Eighth Amendment's proscription of cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). In this jurisdiction, a right to treatment for mental illness has long been recognized, *see, e. g., United States v. Ecker,* 177 U.S.App. D.C. 31, 543 F.2d 178 (1976), *cert. denied,* 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977);

*Ashe v. Robinson,* 146 U.S.App.D.C. 220, 222, 450 F.2d 681, 683 (1971); *Covington v. Harris,* 136 U.S.App.D.C. 35, 41, 419 F.2d 617, 623 (1969); *Rouse v. Cameron,* 125 U.S.App.D.C. 366, 373 F.2d 451 (1967).

9. Consequently, we need not decide what due process would require in the hypothetical case presented by appellant, where a prisoner transferred to a mental hospital for treatment is then discharged and returned to the general prison population without any further care or treatment.

10. The statutory provision relevant to returning a prisoner to the custody of the Department of Corrections reads as follows:

When any person confined in a hospital for the mentally ill while serving sentence shall be restored to mental health within the opinion of the superintendent of the hospital, the superintendent shall certify such fact to the Director of the Department of Corrections of the District of Columbia and such certification shall be sufficient to deliver such person to such Director according to his request. [D.C.Code 1973, § 24–303(b).]

hospital authorities having decided that was no longer necessary, to rise to the same level as the liberty interest involved in a transfer from a prison to a mental hospital. See *Vitek v. Jones*, 445 U.S. 480, 492, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980) (stigma from classification as "mentally ill" invokes due process clause). Therefore, we hold the hearing which was held was not even one to which he was entitled as of right.

◼ The statute pursuant to which the retransfer was effected, D.C.Code 1973, § 24–303(b), requires only certification by the hospital superintendent that the confinee has been "restored to mental health," [11] so that he may be returned to the custody of the Department of Corrections. The statute calls upon the superintendent to make a medical decision. This type of determination is not one which courts are well-equipped to make, and considerable deference must be given to a decision made by those who are. See *Tribby v. Cameron*, 126 U.S.App.D.C. 327, 379 F.2d 104 (1967) (in determining whether criminal acquitee confined in mental hospital is receiving adequate treatment, court's function resembles review of agency action).

◼ The hearing held on appellant's retransfer was required only by Judge Braman's order, and was considered to be necessary because of appellant's unique situation. Appellant had twice before been shuttled back and forth between Lorton and St. Elizabeths. Under these special circumstances, we consider a judicial hearing to have been a reasonable additional protective device for this prisoner and not outside the scope of the court's power. See Super.Ct.Men.H.R. 1 (rules are to be construed so as to protect mentally ill). A judicial hearing may be useful in order to insure the decision to dehospitalize the prisoner is not one made in bad faith or for punitive reasons. However, we hold the decision to require such a hearing is left to the sole discretion of the judge before whom the initial commitment proceeding is conducted.

We emphasize that, given the substantive decision to be made is a medical one, an adversarial judicial hearing is of limited utility. As noted by the United States Court of Appeals for the Second Circuit in an opinion reversing a district court decision which would have required a hearing before the transfer of a prisoner from a mental hospital back to the state prison:

> The nature of the medical judgments involved in this case and the context in which they are made render them peculiarly unsuited to procedural structuring by a court. Compared with other fact-finding processes, the practice of psychotherapy is highly subjective. Since two qualified psychotherapists examining the same patient can reach different conclusions as to malady and cure without either conclusion being demonstrably incorrect, diagnostic consensus is an elusive and sometimes illusory goal. The decision to dehospitalize an inmate is made by a trained physician who is involved in the day-to-day treatment at the hospital, and it is reviewed by the hospital's chief psychiatrist. Under these circumstances, the marginal value of a third professional opinion seems questionable. The argu-

---

11. We interpret the statute as permitting the superintendent to certify a prisoner as having been "restored to health," where the prisoner's illness is in a state of remission following a sustained program of treatment, as was the case with appellant. Under the 1964 Hospitalization of the Mentally Ill Act, D.C.Code 1973, § 21–546, which *Matthews v. Hardy, supra*, tells us must be read into the statutory provisions governing commitment of prisoners, a patient is entitled to immediate release where the hospital's chief of services determines that the patient is "no longer mentally ill to the extent that he is likely to injure himself or other persons if not hospitalized." Equal protection considerations mandate that a prisoner cannot be held to a higher standard of recovery than a civil committee. Their respective status is distinguished only by the fact that the former was convicted of a criminal offense before being hospitalized, and it is clear that a criminal conviction does not permit the state to commit an individual to a mental hospital under circumstances different from those applicable to the general populace. *Vitek v. Jones, supra* 445 U.S. at 493–94, 100 S.Ct. at 1263–64; *Baxstrom v. Herold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966).

ments in favor of requiring review by outside parties are weaker here than in the commitment context, . . . since here the patient has been subject to protracted observation by the hospital treatment staff. In making their evaluations the doctors have recourse to the records of prior evaluations which have accumulated over the course of the patient's stay; in most cases, they will have participated in the patient's treatment. Thus, they are in an especially good position to reach an informed conclusion about the patient's condition. [*Cruz v. Ward*, 558 F.2d 658, 662 (2d Cir. 1977), *cert. denied*, 434 U.S. 1018, 98 S.Ct. 740, 54 L.Ed.2d 765 (1978) (citations omitted).]

### III

■ Having established that the opportunity for the hearing is at the discretion of the judge, we must now determine what. sort of hearing would be appropriate. Appellant argues it was improper to require him to show, by clear and convincing evidence, that he remained mentally ill and would be dangerous or disruptive to the prison routine due to his mental illness. We hold that was not error, although we would state the burden on appellant in another way. Since the hearing in this case was a judicially mandated review of the equivalent of "agency action," the appropriate inquiry would be the same as that ordinarily made in reviewing administrative decisions: whether the decision was arbitrary, capricious, an abuse of discretion or without substantial evidence to support it. *See* D.C. Code 1973, § 1–1510. In reviewing the decision of the superintendent of St. Elizabeths to confine a patient to the hospital's maximum security pavilion, the circuit court wrote:

A "permissible * * * decision" under *Tribby v. Cameron* is one which demonstrably takes account of "the relevant information." The principal purpose of limited judicial review of administrative action is to insure that the decision-makers have (1) reached a reasoned and not unreasonable decision, (2) by employing the proper criteria, and (3) without overlooking anything of substantial relevance. More than this the courts do not pretend to do, and probably are not competent to do. To do less would abandon the interests affected to the absolute power of administrative officials. [*Covington v. Harris*, 136 U.S.App.D.C. 35, 39, 419 F.2d 617, 621 (1969) (footnote omitted).]

This limited sort of review is all that can be asked from the courts in this context. For us to intrude further would require us to usurp a role entrusted by statute to those who have been especially trained to carry it out.

■ Since it is appellant who is contesting the superintendent's decision, it was up to appellant to shoulder both the burden of persuasion and the burden of proof. Regardless of whether the burden of proof is stated as "clear and convincing evidence," or the burden imposed in a challenge to administrative action, it is obvious from the record that the weight of the evidence presented at the hearing points to a conclusion that the superintendent, based on the considered medical judgment of the members of his staff, properly decided that appellant had been restored to mental health to the extent that he could be discharged from St. Elizabeths and returned to the Lorton Correctional Complex, where he could receive the therapy necessary to maintain his illness in a state of remission. We affirm the court's order that the superintendent's decision be carried out.

*So ordered.*

NEBEKER, Associate Judge, concurring:

I concur with the court to the extent it holds that appellant was not entitled as of right to a hearing prior to his return to Lorton Correctional Complex, and that the trial judge did not err in ordering appellant returned to Lorton. However, we are not holding that Super.Ct.Ment.H.R. 1 authorizes the court to order a hearing to examine whether appellant should remain at St. Elizabeths after being certified "restored to mental health." Absent constitutional or statutory authority, imposition of such a

hearing requirement is an unwarranted intrusion by the judiciary into the statutorily prescribed duties of the executive branch. *See In re An Inquiry into Allegations of Misconduct Against Juveniles . . . Department of Human Resources*, D.C.App., 430 A.2d 1087, 1091 (1981). We are surely not holding that D.C.Code 1973, § 24–303(b) is unconstitutional in permitting retransfer to prison on a certificate that appellant was restored to mental health. *Cf. Bolton v. Harris*, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968). Indeed, the court's opinion implies and should express a holding that § 24–303(b) is constitutional without grafting further procedural steps on it.

Due process necessitates a hearing before a prisoner can be involuntarily transferred to a mental hospital pursuant to D.C.Code 1973, § 24–302. *Dobbs v. Neverson*, D.C. App., 393 A.2d 147, 153 n.12 (1978); *Matthews v. Hardy*, 137 U.S.App.D.C. 39, 420 F.2d 607 (1969), *cert. denied*, 397 U.S. 1010, 90 S.Ct. 1231, 25 L.Ed.2d 423 (1970). Transfer of persons back to prison for continued treatment of an "outpatient" nature in no way entails the same consideration and re-

---

1. Language to the contrary in *Matthews v. Hardy, supra* at 44, 420 F.2d at 612, is dictum of

quirement of a hearing.[1] In my view, the court lacked statutory authority to impose such a hearing. In addition, the judge's order violated Super.Ct.Ment.H.R. 9(h) which states:

> If a prisoner . . . consents to hospitalization, . . . the court *shall* order the prisoner transferred to St. Elizabeth's Hospital to receive treatment for his illness. If the prisoner recovers prior to the expiration of his [sentence], he *shall* be returned to the custody of the Department of Corrections and the clerk of the court shall be furnished a copy of the certification by the Superintendent of the hospital. [Emphasis added.]

Retransfer of appellant was not a matter for the court to decide. Thus, it is unnecessary to discuss the burden of proof issue.