Timothy PRICE, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 85–88.

Supreme Court of Wyoming.

March 13, 1986.

Leonard D. Munker, State Public Defender, Martin J. McClain, Appellate Counsel, and K. Leslie Delk, Asst. Public Defender (argued), for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Kevin Saxby, Legal Intern (argued), for appellee.

Before THOMAS, C.J., ROONEY,* BROWN and CARDINE, JJ., and GUTHRIE, J., Retired.

CARDINE, Justice.

Timothy Price pled guilty to violating § 6–2–302(a)(i) and (ii), W.S.1977 (June 1983 Replacement), sexual assault in the first degree. The trial court ordered Price to the Wyoming State Hospital for treatment in accordance with § 7–13–605, W.S.1977, and, after conclusion of that treatment, to commitment at the Wyoming State Penitentiary. The total length of his commitment would be not less than fifteen nor more than twenty years.

Over a year after Price had been ordered to the Wyoming State Hospital, the sentencing court ordered that Price be transferred to the Wyoming State Penitentiary. Price appealed from this order, and this court dismissed the appeal on May 1, 1985. On May 24, 1985, we reinstated the appeal.

We affirm the sentence imposed as well as the subsequent order transferring Price from the hospital to the penitentiary.

## FACTS

The events resulting in Price's guilty plea are not in dispute and are of minimal importance. The following is sufficient for our needs.

In 1983, Price offered to drive a fifteen-year-old girl back to a campground at which her family was vacationing near Moran Junction, Teton County, Wyoming. Instead of taking the girl back to the campground, as he promised, Price took the victim to an isolated road where he raped

* Retired November 30, 1985.

her a number of times and left her abandoned. She was found the next morning by a member of the Teton County sheriff's office.

Price was charged with first-degree sexual assault, in violation of § 6–2–302(a)(i) and (ii), W.S.1977 (June 1983 Replacement), and with being a habitual criminal as defined in § 6–10–201, W.S.1977 (June 1983 Replacement). After arraignment, Price was ordered to the Wyoming State Hospital for a thirty-day evaluation. Pursuant to agreement, on January 3, 1984, Price pled guilty to the sexual assault charge, and the habitual criminal count was dismissed.

A presentence investigation report detailed Price's stormy background, including a number of past offenses for which Price was dealt with in a very lenient manner. This report was in addition to the psychological evaluation from the Wyoming State Hospital, a psychological evaluation from psychologist Brian Miracle, and yet another report from psychologist John Thorn, in which he reviewed documents recording Price's conduct. The Wyoming State Hospital and Dr. Miracle reported that Price was not mentally ill and was competent to stand trial. Dr. Thorn stated that past evaluations had proved inaccurate and that incarceration would not provide Price with an opportunity "to improve his lot."

The court mentioned all of these reports at the sentencing hearing and concluded

that there had been a history of repetitive and compulsive behavior accompanied by violence and, therefore, sentenced Price in accordance with §§ 7–13–604 and 7–13–605, W.S.1977.[1] The judgment and sentence entered on February 6, 1984, stated in part:

"1. That you, TIMOTHY PRICE, be remanded to the custody of the Sheriff of Teton County, Wyoming, and that you be conveyed and delivered forthwith to the Wyoming State Hospital located at or near Evanston, Wyoming for treatment in accordance with the provisions of § 7–13–605 W.S. 1977, and that upon the conclusion of said treatment and after notice to the Court, that you be released from the said Wyoming State Hospital and be committed to the Wyoming State Penitentiary located at or near Rawlins, Wyoming for such period of time that your total commitment at the Wyoming State Hospital and the Wyoming State Penitentiary shall be not less than fifteen (15) years nor more than twenty (20) years."

Price did not timely appeal from this judgment and sentence.

After Price had been committed to the Wyoming State Hospital, a dispute arose over whether his treatment should be considered completed. If the treatment was concluded, the judgment and sentence provided for the judge to order Price committed to the Wyoming State Penitentiary. Over one year after Price had been committed to the hospital, the judge considered

---

1. Section 7–13–604, W.S.1977, provides in part:
   "If it shall appear to the court from said written report that the conduct of the person examined in accordance with section 7–349, Wyoming Statutes 1957 [§ 7–13–602], (hereinafter called 'the convicted person') has in the past been characterized by a pattern of repetitive or compulsive behavior, accompanied by * * * violence, * * * then the court may enter its order in accordance with section 7–352, Wyoming Statutes 1957 [§ 7–13–605] or sentence such convicted person to the state penitentiary for a period of time not greater than the maximum provided by law for the crime of which such person was convicted or to which a plea of guilty was entered."
   Section 7–13–605, W.S.1977, provides:
   "The court may place such convicted person on probation, with the requirement, as one (1) of the conditions of such probation, that he or she receive outpatient psychiatric treatment, at the convicted person's own expense, in the manner and at the place to be prescribed by the court in each individual case; or such convicted person may be committed by the court for treatment in a hospital or other institution designated by the court, either within or without the state of Wyoming, including the Wyoming state hospital at Evanston. Upon release from such hospital, or other institution, the convicted person shall be subject to parole supervision or the court at its discretion may enter orders of commitment to the state penitentiary specifying the minimum or maximum periods a convicted person may be confined subject to those limitations set forth in section 7–356, Wyoming Statutes 1957 [§ 7–13–609]."

the treatment completed and ordered that Price be committed to the penitentiary. Price thus brings his appeal to this court, raising the following issues:

"1. Whether the original Judgment and Sentence is void to the extent that it failed to follow the parameters of § 7-13-605 Wyoming Statute (1977).

"2. Whether the sentencing court erred by not permitting a hearing before Appellant's transfer to the Wyoming State Penitentiary from the Wyoming State Hospital.

"3. Whether the sentencing court has denied Appellant his fundamental rights under the Constitution by sentencing him under § 7-13-605 Wyoming Statute (1977), a statute designed to provide treatment, and yet failing to see that treatment was provided."

Preliminarily we must confront a jurisdictional question. This court is duty bound to inquire into matters affecting jurisdiction and must dismiss an appeal if the record discloses a want of jurisdiction. *Merritt v. Merritt*, Wyo., 586 P.2d 550, 555 (1978).

The Wyoming Rules of Appellate Procedure allow us to review only final orders. *State v. Platte County Department of Public Assistance and Social Services*, Wyo., 638 P.2d 165, 168 (1981). As noted above, Price did not appeal from the judgment and sentence when it was originally imposed on February 6, 1984. That was a final order, as defined by Rule 1.05, W.R.A.P., from which an appeal may be taken within fifteen days under Rule 2.01, W.R.A.P. Price failed to so act, but instead has appealed from the order transferring him to the penitentiary which was entered nearly one year after the judgment and sentence. He contends that this order is a final order under the provision of Rule 1.05, W.R.A.P., which states that "an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment" is a final order. According to Price, the order transferring him to the penitentiary finally determined that he would be incarcerated,

and thus is a final order from which an appeal may be taken.

Our determination of the sentencing scheme under §§ 7-13-604 and 7-13-605, W.S.1977, and analysis of the sentence imposed in this case, leads us to a contrary conclusion. These statutes provide for a complete sentence to be imposed immediately upon conviction, and this was done by the trial court in the present case. The judgment and sentence entered on February 6, 1984, was a final order when entered. The transfer order appealed here merely enforced the judgment and sentence. It did not determine that Price would be incarcerated for his crime and was not an order which in effect determined the action. An appeal limited to this transfer order would not be properly before this court.

Price, however, has also asserted in his notice of appeal that he is appealing from the judgment and sentence as well as the order of transfer. In his petition to reinstate this appeal, Price asked that this court issue a writ of certiorari so that we could review the original judgment and sentence despite his counsel's failure to timely appeal under Rule 2.01, W.R.A.P. He based this request on the United States Supreme Court decision in *Evitts v. Lucey*, —— U.S. ——, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985), which held that "[a] first appeal as of right * * * is not adjudicated in accord with due process of law if appellant does not have the effective assistance of an attorney." In order to ensure that Price be afforded effective assistance of counsel, we have reinstated his appeal taken from the judgment and sentence. Therefore, this is an appeal from a final order under Rule 1.05, W.R.A.P.

THE ILLEGAL SENTENCE

Before reaching Price's illegal sentence and due process arguments, we note that Price failed to move the sentencing court for correction of the "illegal sentence" un-

der Rule 36, W.R.Cr.P.,[2] which provides that the court may "correct an illegal sentence at any time." A motion to correct an illegal sentence is normally for the trial court in the first instance. Wright, Federal Practice and Procedure: Criminal 2d § 588 (1982). The United States Supreme Court has, however, stated that "[i]t is more appropriate, whenever possible, to correct errors reachable by the appeal than remit the parties to a new collateral proceeding." *Bartone v. United States,* 375 U.S. 52, 84 S.Ct. 21, 23, 11 L.Ed.2d 11 (1963). This practice, of resolving the question of a possible illegal sentence on appeal rather than waiting for the appellant to file a Rule 35 motion (Rule 36, W.R.Cr.P.) in district court, has been followed by a number of courts of appeals. See, e.g., *United States v. Rosenbarger,* 536 F.2d 715 (6th Cir. 1976); *Berry v. United States,* 435 F.2d 224 (7th Cir.1970); but see *United States v. Horton,* 646 F.2d 181 (5th Cir.1981); *United States v. Weiner,* 418 F.2d 849 (5th Cir.1969), for authority that appellate courts would not consider the claimed illegality until the appellant had moved for correction at the district court level.

We have concluded that, in the interest of judicial economy, we will consider appellant's two substantive claims, i.e., that his sentence was illegal and that he was denied due process when transferred from the mental hospital to prison. Our adjudication should not be construed as a rejection of the general rule that a motion for correction under Rule 36 should be made to the sentencing court in the first instance. The denial of such motion is, of course, a final order from which an appeal may be taken. *Hopkinson v. State,* Wyo., 704 P.2d 1323 (1985).

The sentence imposed read in part: "That you, TIMOTHY PRICE * * * be conveyed * * * to the Wyoming State Hospital * * * for treatment * * * and that upon conclusion of said treatment * * * be committed to the Wyoming

State Penitentiary * * * for such period of time that your total commitment * * * shall not be less than fifteen (15) nor more than twenty (20) years."

Price argues that the sentence was illegal because § 7-13-605, W.S.1977, "is not written to allow for sentencing to the Penitentiary *and* treatment at the hospital."

To support his argument, Price relies on our decision in *McGiff v. State,* Wyo., 514 P.2d 199 (1973). He quotes the following from *McGiff:*

"So there can be no misunderstanding * * * we believe that * * * the trial court could, in its sole discretion, determine whether a convicted person coming under the sex offender's sentencing act (§§ 7-348 through 7-378, W.S.1957) would be sentenced to the penitentiary or committed to the State Hospital, and that nothing in the statutes indicates that a preference should be given to either sentence or commitment." 514 P.2d at 200.

From this, Price concludes that "§ 7-13-605 clearly provides for an 'either/or' type of sentence," i.e., either sentencing to the penitentiary or commitment for treatment, but not both sentencing and treatment.

McGiff does not stand for that proposition. The above quote was taken from our denial of a petition for rehearing and not from the actual *McGiff* decision. We simply clarified our holding that even if the reports of examining physicians revealed that the convicted person's conduct fell within the description of the statute, § 7-351, W.S.1957 (now § 7-13-604) did not "require that the trial court must commit the defendant to hospital treatment * * *." *McGiff v. State,* Wyo., 513 P.2d 407, 410 (1973). That is quite different from appellant's contention that the sex offender statutes prevent the trial court from imposing both commitment to the hospital and confinement to the penitentiary.

Price next contends that the plain language of § 7-13-604 only gave the court

**2.** Rule 36, W.R.Cr.P., is the same as Rule 35 of the Federal Rules of Criminal Procedure and "federal case law interpreting Rule 35 * * * is

persuasive with respect to our interpretation of our identical Rule 36 * * *." *Peterson v. State,* Wyo., 706 P.2d 276, 278 (1985).

two sentencing options. It could have sentenced him to the penitentiary or it could have ordered treatment without imposing sentence until treatment was completed. Section 7–13–604 provides that if the convicted person meets the stated statutory requirements, "then the court may enter its order in accordance with [§ 7–13–605] *or sentence such convicted person to the state penitentiary * * *.*" (Emphasis added.) Section 7–13–605 provides that the court

"may place such convicted person on probation, with * * * one (1) of the conditions of such probation, that he or she receive * * * psychiatric treatment * * * or such convicted person may be committed by the court for treatment in a hospital. * * * Upon release from such hospital, * * * the convicted person shall be subject to parole supervision or the court at its discretion may enter orders of commitment to the state penitentiary * * *."

According to Price, a court which chooses to apply § 7–13–605 can impose a penitentiary sentence only after the defendant's treatment is complete. We disagree. Section 7–13–605 does not authorize the court to impose a "sentence" at the end of a convict's mental treatment. Instead the court may "enter orders of commitment" to the penitentiary upon the convict's release from the hospital. These orders of commitment simply carry out the sentence which the court should have imposed before the defendant entered the hospital.

The phrase "[u]pon release from such hospital, or other institution, the convicted person shall be subject to parole supervision," appearing in § 7–13–605, supports our conclusion that the sentence must be imposed before the convicted person is committed to the hospital. Parole is defined by the legislature as being "permitted to leave the confines of the institution in which [the person] is confined * * * *under sentence ordered by any district court of this state.*" (Emphasis added.) Section 7–13–402, W.S.1977. Under this definition it is clear that if a person is "subject to parole supervision" upon re-

lease from the hospital, there must first be a sentence imposed by the district court.

■ We conclude that the plain meaning of §§ 7–13–604 and 7–13–605, W.S.1977, supra, when considered together, is that the court impose sentence and that the convicted person then begin serving his sentence in the penitentiary (§ 7–13–604), or that he be placed on probation, one of the conditions being that he receive psychiatric treatment (§ 7–13–605). *Geraud v. Schrader,* Wyo., 531 P.2d 872 (1975).

"The courts must determine legislative intent from statutory language and not conjecture. Where the language of a statute is plain, unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory construction, and the court has no right to look for and impose another meaning. Courts will not usurp the power of the legislature by deciding what should have been said." (Citations omitted.) Id. at 878.

When the trial court first imposed sentence, then committed Price to the Wyoming State Hospital for treatment, and then to the penitentiary, it was a proper sentence within the provisions of the statutes.

■ We disagree with Price's contention that in imposing such a sentence the "court attempted to bypass all the procedural steps inherent in the statute * * *." Section 7–13–605 provides that the convicted person may be committed to the penitentiary upon release from the hospital after he has received treatment. In this case the record shows that the court did not enter its order of commitment until Price had completed the drug abuse program and individual counseling, had made considerable therapeutic gains, and it was clear that further treatment would not be therapeutic.

After Price had been committed to the hospital, Dr. Burnett, on June 8, 1984, wrote the sentencing judge stating that there was nothing more the Wyoming State Hospital could do for Price and he should, therefore, be transferred to the penitentia-

ry. Counsel for Price requested a hearing to determine what treatment had been provided, and requested an order requiring the Wyoming State Hospital to provide appropriate treatment or to transfer Price to a facility which could provide adequate treatment. In response, the sentencing judge discussed the situation with counsel and requested another report from the Wyoming State Hospital. On October 23, 1984, Dr. Burnett again reported that Price had exhausted all of the treatment available at the hospital. On December 4, 1984, however, the superintendent and medical director of the Wyoming State Hospital, Dr. Karn, requested that Price be allowed to remain at the hospital. Price remained at the State Hospital until February 20, 1985, at which time Dr. Karn stated that no further gains could be made at the hospital and suggested that Price should be transferred to the penitentiary.

■ During this time Price's counsel's suggestions for treatment were also considered by the judge. Only after all of these communications did the trial judge order Price committed to the penitentiary to serve the remainder of his sentence. These actions of the trial judge do not reflect an attempt to bypass all of the procedural steps inherent in § 7-13-605. As we said in *McGiff v. State*, supra, the court is not required to commit the defendant for treatment initially; and it follows that there is no requirement that treatment be continued for any specific period of time. The entry of the order transferring Price to the penitentiary was within the court's discretion as provided in § 7-13-605, W.S.1977.

## DUE PROCESS

■ Price's next claim is that a hearing was required before the court could properly enter its order transferring him from the hospital to the penitentiary. We find nothing in the statute which requires such a hearing, nor do we accept Price's contention that due process requires a hearing. In fact, the actions taken by the judge went beyond any procedural safeguards required in this case.

The court in *In re Hurt*, D.C.App., 437 A.2d 590 (1981), dealt with the situation presented by this case. There a prisoner was transferred from a hospital to a correctional facility. He claimed that his pretransfer hearing did not meet the requirements of due process. The court held that the prisoner's liberty interest did not rise to the same level as the liberty interest of a prisoner transferred in the opposite direction—from prison to a mental hospital.[3] It went on to state that the hearing which was held was one the prisoner was not entitled to as a matter of right. Likewise, the court in *Hindman v. State*, Mo.App., 597 S.W.2d 264, 271 (1980), noted that the prisoner failed to demonstrate why transfer from a hospital to a penitentiary without notice or hearing constituted a denial of due process.

We agree with these courts that a liberty interest protected by the due process clause is not present when the sentencing court transfers a prisoner from a hospital to a penitentiary to complete the remainder of a sentence originally imposed. There is little to be achieved by a pretransfer hearing in these cases. The second circuit has noted that many psychological judgments are highly subjective and "two qualified psychotherapists examining the same patient can reach different conclusions as to malady and cure without either conclusion being demonstrably incorrect * * *." *Cruz v. Ward*, 558 F.2d 658, 662 (2nd Cir. 1977). Therefore, the safeguards provided by the usual fact-finding processes of an adversarial hearing "are much less functional where the issue is whether a doctor thinks his patient requires further treatment." Id.

---

**3.** In *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), the Supreme Court held that the involuntary transfer of a prisoner from a penitentiary to a mental hospital violates a liberty interest protected by the due process clause. The stigma resulting from the classification of "mentally ill" required that safeguards provided by the due process clause be afforded the prisoner.

Finally, we note that Price's sentence came only after he voluntarily pled guilty and after he waived the examination provided for in § 7–13–602, W.S.1977. Price has not identified a liberty interest at the time of the transfer order that was not adequately safeguarded by the procedures available at the time he pled guilty.

## DENIAL OF TREATMENT

Price's final contention is that the court denied his fundamental right to treatment when it transferred him to the penitentiary a year after it committed him to the hospital. "[A]ll the evidence indicat[ed] that the State Hospital had not provided even adequate diagnosis, let alone proper treatment," according to Price. He argues that his transfer to the penitentiary before being properly treated violated the constitutional prohibition against cruel and unusual punishment.[4]

We disagree with Price's factual premise that all of the evidence indicated that he had not received proper treatment. As previously indicated, the hospital staff stated a number of times that Price had received all of the treatment available and had made progress. On October 23, 1984, the trial judge was informed that Price had been involved in group and individual therapy and had "completed all phases of the Substance Abuse Program, as well as individual counseling" and had "exhausted all treatment modalities available for him" at the Wyoming State Hospital. On February 20, 1985, the Wyoming State Hospital staff informed the trial judge that Price had "made considerable therapeutic gains" and that the additional "[t]hree or four years at the Wyoming State Hospital, as recommended by Dr. Thorn, is *not* seen as therapeutic by the Wyoming State Hospital staff."

Price's claim that he did not receive proper treatment is based upon Dr. Thorn's opinion that Price's problems had not been adequately dealt with by the hospital staff. Clearly Dr. Thorn disagreed with Dr. Burnett and Dr. Karn as to Price's problems and the adequacy of the treatment provided. But this difference of opinion does not support Price's contention that all of the evidence indicated that the Wyoming State Hospital had not provided adequate treatment.

The conclusion that Price should not be further treated at the hospital was made by hospital staff involved in the day-to-day treatment of the patient. In this situation, the sentencing judge obviously felt that the value of a third professional opinion was limited, which is an approach shared by other courts. See, e.g., *Cruz v. Ward*, supra, 558 F.2d 658. We believe that Price's contention in this context amounts to a challenge to the lower court's finding that treatment had been provided. On appeal we must accept this finding of fact "as long as [it is] supported by substantial evidence from which a reasonable inference may be drawn." *Fortin v. State*, Wyo., 622 P.2d 418, 420 (1981). Clearly the lower court's finding must be accepted in this case.

We disagree with Price's initial premise that he did not receive adequate treatment. Therefore, it is unnecessary for this court to determine the constitutional question of whether Price's confinement, in the penitentiary, violates the prohibition against cruel and unusual punishment.

The sentence imposed was within the dictates of §§ 7–13–604 and 7–13–605. There was no constitutional right to a hearing upon Price's transfer from the hospital to the penitentiary. Finally, the record does not support the claim that Price failed to receive treatment from the hospital.

## THE DISSENT

Justice Guthrie, Retired, in his dissent expresses concern that the majority opinion infers that

---

**4.** The Eighth Amendment to the United States Constitution provides:
"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

Article 1, § 14 of the Wyoming Constitution provides in part:
"Excessive bail shall not be required, nor excessive fines imposed, nor shall cruel or unusual punishment be inflicted."

"any attorney appearing for a client who enters a guilty plea must nevertheless prosecute an appeal, whether frivolous or not, or he will be charged with having given ineffective representation to his client,"

and that

"hereafter the majority will grant a 'first appeal as of right' to any inmate who is presently confined pursuant to a plea of guilty without regard to time limitations or appellate rules once thought to be jurisdictional."

A fair reading of the opinion will not support either statement. First, this was more than an appeal from a simple guilty plea. The trial judge had entered an order transferring appellant from the state hospital to incarceration in the penitentiary. The order was pursuant to § 7-13-605, W.S.1977, supra, which provides in part, "[u]pon release from such hospital * * * the court * * * may enter orders of commitment to the state penitentiary * * *," or grant parole. Appellant believed that an appeal would lie from the order and timely filed a notice of appeal. These facts hardly say that an attorney must prosecute an appeal from every guilty plea, "frivolous or not," or be charged with ineffective representation. Nor does the opinion grant a "first appeal as of right" from any guilty plea. It is clear that unusual circumstances were present in this case.

Initially we dismissed this appeal. There was a motion that it be reinstated or that certiorari be granted. We reinstated the appeal because the question presented was important, and we thought appellant should be heard. Justice Rose, Retired, voted for reinstatement and then, due to his retirement from the court, recused himself. Justice Guthrie, Retired, replaced Justice Rose and now dissents. A dismissal of the appeal as suggested would be a waste of judicial time and resources, for we are confident that it would then be heard upon certiorari with the same result. Finally, we note that although appellant was not successful, he was given his day in court and heard upon the merits. That is surely preferable to the suggestion of the dissent under the facts of this case.

Affirmed.

ROONEY, Justice, specially concurring.

I agree with the result reached by the majority opinion. However, I would dismiss the appeal as not having been timely taken from a final order. I do not believe that a mere allegation of ineffective assistance of counsel is sufficient to negate appellate laws or rules. To cause such laws and rules to not be disregarded, I would place a burden on the movant to overcome a strong presumption that the action of counsel was reasonable under any circumstance.

In this instance, the allegation is a failure to file a notice of appeal within the allocated time subsequent to the judgment and sentence which directed custody first to the Wyoming State Hospital and then to the penitentiary. The failure to so notice an appeal could well be a result of a considered judgment on the part of counsel that such would be without merit and possibly frivolous. There was no reference to facts which would overcome the presumption that the action of counsel was reasonable. Nor could there be under the circumstances of this case—a plea of guilty to a vicious crime; a criminal record, including serious crimes; and a sentence involving consideration of treatment or rehabilitation, punishment, remand from society, and example to others.

Ineffective assistance of counsel does not encompass a reasonable exercise of judgment on the part of counsel, even should such exercise be other than perfect.

THOMAS, Chief Justice, dissenting.

I must dissent in this case from any disposition of Price's contentions on the merits. Price did not file a timely notice of appeal from the judgment and sentence. We previously have held that an appeal in a criminal case must be dismissed if the notice of appeal is not filed in accordance with Rule 1.02, W.R.A.P. *Murry v. State*, Wyo., 631 P.2d 26 (1981).

The district court had no jurisdiction to enter an order transferring Price to the state penitentiary from the state hospital. That matter is committed to the executive branch of government once the judgment and sentence has been entered. In any event, such an order is not a judgment or final order within the definition of Rule 1.05, W.R.A.P. Consequently, the jurisdiction of this court is not invoked by an appeal from that order.

The only other possibility is to recognize an appeal from the original judgment and sentence. In *Murry v. State,* supra, we refused to do that. I am not persuaded by the information available to the court that Price has demonstrated any right to relief pursuant to *Evitts v. Lucey,* — U.S. —, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). In *Wright v. State,* Wyo., 707 P.2d 153 (1985), we held that we do not review sentences on appeal which are permitted under the appropriate statute because there is no abuse of discretion by the sentencing court. *Holmes v. State,* Wyo., 715 P.2d 196 (1986). Consequently, I am unable to discern any ineffective assistance of counsel in failing to appeal from a judgment and sentence entered upon Price's plea of guilty. A petition for certiorari should not be granted under the facts of this case. Price's remedy, if he has one, is to seek reduction or correction of sentence pursuant to Rule 36, W.R.Cr.P. Alternatively he could pursue the post-conviction relief provided by § 7-14-101, et seq., W.S.1977.

I would dismiss this appeal because there is no jurisdiction vested in this court.

GUTHRIE, Justice, Retired, dissenting.

I dissent. It is my opinion that the order reinstating this appeal was improvidently entered[1] and that this Court has no jurisdiction of this matter.

I am puzzled by the majority who use a vagrant statement from the case of *Evitts v. Lucey,* — U.S. —, 105 S.Ct. 830, 83 L.Ed.2d 821, reh. denied — U.S. —, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985), to justify the Court's jurisdiction. Critical analysis of this case reveals many distinguishing facts which set it apart from the instant one.

First, the judgment from which Lucey appealed was entered after a trial and a jury verdict. An attempt to appeal this judgment was timely initiated by his counsel but was dismissed because of the error or inadvertence of that counsel. This is in sharp contrast to the factual situation of defendant Price who freely entered a guilty plea. Neither he nor his attorney found any grounds for objecting, nor was this judgment attacked until sometime after the notice of appeal should have been filed and Price became unhappy with the application of the judgment.

Secondly, there was an unchallenged finding that Lucey "received ineffective assistance of counsel on appeal." *Evitts v. Lucey,* supra, 105 S.Ct. at 833. I found no suggestion or contention that this defendant has received such ineffective assistance of counsel except mayhap in the minds of the majority.

It may well have been unnecessary for me to set out anything else but Justice Brennan's statement of the issue he decided in *Evitts v. Lucey,* supra, 105 S.Ct. at 833, and which certainly limits its scope and application when he said, "Rather the issue we must decide is whether the Commonwealth's dismissal of the appeal, *despite the ineffective assistance of respondent's counsel on appeal,* violates the Due Process Clause of the Fourteenth Amendment." (Emphasis added.)

I have some concern that one who reads the opinion of the majority may infer that any attorney appearing for a client who enters a guilty plea must nevertheless prosecute an appeal, whether frivolous or not, or he will be charged with having given ineffective representation to his client. Or are we to assume that hereafter the majority will grant a "first appeal as of right" to any inmate who is presently confined pursuant to a plea of guilty without

---

1. This writer did not participate in the decision    to reinstate this appeal.

regard to time limitations or appellate rules once thought to be jurisdictional.

