Jack Boyd YORK, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 5345.

Supreme Court of Wyoming.

Nov. 12, 1980.

Dan R. Price, II of Morgan & Brorby, Gillette, for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division, and John W. Renneisen, Asst. Atty. Gen. (argued), Cheyenne, on brief, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Defendant–appellant appeals from an order of the district court denying appellant's petition for post–conviction relief. The petition was filed pursuant to § 7–14–101 et seq., W.S.1977 [1] and alleged violation of appellant's constitutional rights in the particulars which are contained in the issues presented on this appeal.

Appellant words those issues as follows:

"1. Is there a substantial denial of constitutional rights when the prosecution fails to fulfill completely its portion of a criminal plea bargain agreement where the defendant, who was offered the plea bargain, has fulfilled his portion by a plea of guilty?

"2. Did the court improperly inform the defendant that he would lose his right to appeal by entering a plea of guilty?

"3. Is it mandatory for the court before accepting a plea of guilty to notify a defendant as required by Rule 15(c)(5) W.R.Cr.P., even though the defendant is not placed under oath and is not asked questions about the offense?

"4. Was a factual substantial basis for a plea of guilty presented to the court in this case?

"5. Did the court err by not giving the defendant the opportunity to give his side of the story?

"6. Did the court err by not assuring itself that the defendant possessed an understanding of the law in relation to

---

1. Section 7–14–101 et seq., W.S.1977 provide a remedy for persons convicted and imprisoned who assert violation of constitutional rights. Section 7–14–101 begins: "Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the constitution of the United States or of the state of Wyoming, or both, may institute proceedings under this act * * *."

the facts before accepting the plea of guilty?"

We affirm.

## PERFORMANCE OF PLEA BARGAIN

On October 18, 1978, appellant pleaded not guilty to the charge of murder in the second degree. On November 30, 1978, the plea was changed to "not guilty" and "not guilty by reason of mental illness or deficiency." Examination of appellant was made by a psychiatrist at the Wyoming State Hospital and by a court appointed psychiatrist at Rapid City, South Dakota. Each gave an opinion that appellant did not have a mental illness or deficiency which would result in a lack of capacity to comprehend his position, to understand the nature and object of the proceedings against him, to cooperate with his counsel and conduct his defense in a rational manner, to appreciate the wrongfulness of his conduct at the time of the offense, and to conform his conduct to the requirements of law at the time of the offense.

As a result of the plea bargaining efforts, the county attorney offered to reduce the charge against appellant to *voluntary* manslaughter and to secure dismissal of a felony indictment charging larceny or receiving stolen property with a value of over $100, which was outstanding in New Mexico. By letter, the district attorney's office for the Second Judicial District, State of New Mexico, agreed to such dismissal if appellant "enters a plea of guilty to the charge of *Voluntary* Manslaughter" (emphasis supplied) in this case.

Appellant refused the offer of the State, but agreed to plead guilty to the charge of *involuntary* manslaughter. The written plea agreement signed by the deputy county attorney, by appellant, and by his attorney, dated March 9, 1979, makes no reference to the New Mexico charge or to the dismissal thereof.

At the change of plea proceedings, the trial court requested the deputy county at-

torney to state his understanding of the agreement. The trial court then requested appellant's attorney to do likewise. They said that it required the withdrawal of appellant's not guilty pleas made to the second degree murder charge, the reduction of the charge to involuntary manslaughter, and appellant's plea of guilty to it. The court then inquired of the defendant as follows: [2]

"Q. Now, Mr. York, what's your understanding of this agreement?

"A. What they said is correct, sir.

"Q. Well, I'd like to hear it from you. What are you going to do and what's the State going to do in this matter?

"A. I don't understand what you mean, sir.

"Q. Well, you signed this plea agreement, didn't you?

"A. Yes, sir.

"Q. And did you read it before you signed it?

"A. Yes, sir.

"Q. I want you to answer this, Mr. York, without talking to Mr. Sowada, and I want you to answer without Mr. Sowada talking to you. Now, you can read the agreement again if you wish, but I want you to tell me what you're going to do and what the State's going to do in regard to this agreement.

"A. Well, I'm pleading guilty to the charge of manslaughter because I feel that there is a possibility of acts that would constitute this charge on the basis of the evidence that I've seen and the pictures and so forth, and therefore, I feel that I possibly am guilty of this charge and that's the reason I want to plead guilty to it.

"Q. Now, Mr. York, you entered a plea here several months ago of not guilty and you entered a plea of not guilty by reason of mental illness or deficiency. Now, what are you going to do about that plea of not guilty by reason of mental illness or deficiency?

2. We quote extensively from the record inasmuch as the presented issues are predicated almost exclusively on that which occurred at the change of plea proceedings.

"A. Well, sir, the reason that plea was originally was because part of this I just simply cannot remember.

"Q. What are you going to do with that plea, what have you agreed to do about that plea?

"A. Well, what I agreed to do with this is drop that plea, is—well, withdraw, I'd drop—I mean, withdraw, okay, because although I still can't remember parts—my memory hasn't improved any.

"Q. When did you first look at this instrument, this plea agreement? When did you first look at it?

"A. Today.

"Q. Just a little while ago?

"A. Yes, but we talked about it a little bit.

"Q. Court's going to be in recess for ten minutes, and I want you to go over it again real thoroughly with your attorney. I want you to make sure you understand what's in it.

"THE COURT: Court will be in recess for ten minutes.

"(At this time, the Court recessed at 3:25 p. m., returning to the courtroom at 3:50 p. m.)

"Q. Mr. York, have you had time to go over this plea agreement during this recess?

"A. Yes, sir.

"Q. Now, would you tell the Court your understanding of the agreement, please?

"A. Well, I'm going to withdraw my plea of not guilty to second degree murder by reason of mental illness or deficiency and the State will—now, wait a minute,—and the State agrees to reduce the charge to manslaughter, involuntary manslaughter.

"Q. And when the State does that, how are you going to plead to the reduced charge?

"A. Guilty, sir.

"Q. Did you and Mr. Sowada talk about this plea bargaining?

"A. Yes, we did, sir.

"Q. When Mr. Sowada announced to you that he had reached this agreement with the State, what did you tell him?

"A. Well, he announced to me yesterday he reached an agreement with the State and I says, 'Fine, let's go ahead with it.'

"Q. You were in agreement?

"A. Yes, sir.

"Q. You understand this agreement?

"A. Yes, sir.

"Q. Now, Mr. York, Mr. Sowada is your legal advisor, he's your lawyer and counselor and he presents you and has. He'd represent you at the trial, he'd conduct the trial, he'd make most all the decisions. But when it comes time for a person charged with a crime to plead guilty to the original charge or to a reduced charge, that person, the defendant, in this case you, you have to make the decision to enter the plea of guilty and it has to be your sole decision. Do you understand that?

"A. Yes, I do, sir.

"Q. Now, is this your decision to enter into this plea agreement?

"A. Yes, sir."

■　Although there was no mention of the New Mexico charge during the trial court's inquiry and although it was not included in the written plea agreement, appellant now complains that the prosecution failed to fulfill its portion of the agreement in not securing dismissal of the New Mexico charge and that the procedure was, therefore, improper. The trial court's findings that appellant "understood the plea agreement with regard to the charges in New Mexico," and that the "written plea agreement * * * shows no mention of the New Mexico charges nor any disposition thereof," were supported by substantial evidence. The terms and conditions of the plea agreement as presented to the court and as thoroughly discussed in detail before the court were fully performed. See *Hanson v. State*, Wyo., 590 P.2d 832 (1979).

■　Further, appellant was not substantially prejudiced by such inasmuch as the New Mexico charge was actually dismissed. Accordingly, even though the procedure be erroneous, it would not be subject to rever-

sal if prejudice is not established. *Pure Gas and Chemical Company v. Cook*, Wyo., 526 P.2d 986 (1974); *Waters v. Trenckmann*, Wyo., 503 P.2d 1187 (1972); *Robertson v. State Highway Commission*, Wyo., 450 P.2d 1003 (1969).

## PROPRIETY OF PROCEEDINGS AT WHICH APPELLANT CHANGED HIS PLEA

Appellant's last five contentions of error concern the propriety of the proceedings at which he changed his plea from "not guilty" and "not guilty by reason of mental illness and deficiency" to the charge of second degree murder to that of "guilty to the charge of involuntary manslaughter."

A review of the transcript of such proceedings reflects an exhaustive and detailed effort by the trial court to ascertain the voluntariness of appellant's action and appellant's understanding of the consequences of it. Such is necessary. *Cardenas v. Meacham*, Wyo., 545 P.2d 632 (1976). After ascertaining appellant's understanding of the plea agreement (see transcript quotation, supra), the trial court inquired concerning appellant's access to drugs, alcohol, or prescription medicine and was told that there was no such access. He inquired of appellant's attorney concerning his knowledge of grounds to believe appellant was not competent to understand and enter the plea agreement. The attorney said he knew of none and that in his opinion appellant understood "what he's doing." The trial court then asked appellant the following questions and received the following answers:

"Q. Now, Mr. York, you've entered a plea of not guilty in this matter and you can persist in that plea of not guilty throughout all these proceedings. Did you know that you had that right?

"A. Yes, sir.

"Q. Now, Mr. York, this amended Information charges a felony also, and you're entitled to a jury trial. That would be a trial before twelve men and women who would sit in that jury box to your left and hear all of the case, hear the State's side and your side and listen to the Judge give them instructions on the law, and then would retire to render a verdict. Now, at any such trial, the State would have the burden of proving that you were guilty beyond a reasonable doubt. You would not have to prove your innocence. You would be presumed innocent throughout the trial and until the verdict of the jury was otherwise. Now, the jury, all twelve would have to agree before you could be convicted of any crime. You would not have to assist the State in presenting its evidence. The State must prove the charges by its evidence. You could take the witness stand and testify if you wanted to, or your could remain silent and not take the stand. If you did the latter, not take the stand, the State couldn't comment on that or use it against you in any way, because to do so would be to violate your right against self–incrimination.

"Do you understand your constitutional right to a trial and against incriminating yourself and being represented at this trial by your attorney?

"A. Yes, I do, sir.

"Q. Now, by entering a plea of guilty, you admit in this particular case that you've killed a human being by your culpable neglect or criminal carelessness. Do you understand that, sir?

"A. Yes, sir.

"Q. And by entering a plea of guilty, you will also waive your right to trial by jury and waive your right to cross–examine the State's witnesses and to call witnesses in your behalf. You waive your right against self–incrimination, because you're admitting the offense. Mr. York, you waive any legal defense that you might have or that might exist in law against this charge, and the sole remaining issue will be the sentence of the Court. Do you know what the maximum penalty is for manslaughter in Wyoming?

"A. Twenty years, sir.

"Q. You're right, Mr. York, the maximum is twenty, the minimum is one year. In addition to any prison sentence, the Court can impose a fine of a thousand

dollars, which can be added to any period of incarceration. Now, have you thought about this penalty before you entered into the plea agreement?

"A. Yes, sir.

"Q. Now, a plea of guilty to a felony has some indirect consequences, Mr. York. In Wyoming, you lose your right to vote at all elections, you lose the right to serve on juries, you lose the right to be appointed or elected to positions of trust in the state and any of its subdivisions. The conviction could be used against you in another criminal case if there be one. A conviction could affect your credibility as a witness, that is, your giving testimony in another case, whether it be a civil case or a criminal case.

"The Federal Government has laws pertaining to the possession of firearms by those who have been convicted of felonies. That would apply to you. It may lead to difficulty in obtaining a job in the future. I want you to have somewhat of a general understanding that there are these indirect consequences. Do you have any questions about those?

"A. No, sir."

Appellant then responded negatively to several questions of the trial court concerning promises, threats, harassment, and suggestions of leniency in connection with the plea bargain.

After the plea of "not guilty" and "not guilty by reason of mental illness or deficiency" was withdrawn, and the appellant pled guilty to the amended information charging involuntary manslaughter, the court asked the deputy county attorney what the evidence of the State would be if the matter were to go to trial.

The deputy county attorney advised that an autopsy reflected the death to have been caused by a bullet passing through the heart. The deputy county attorney presented testimony of the undersheriff. Under oath, he testified to the result of his investigation of the homicide. He related his findings at the scene of the crime; that the deceased had his left hand in his pocket; that the path of the bullet through the body

was from the left chest sternum area to the lower right part; to the recovery of the bullet; that "[t]he gun would have had to have been held at an elevated position above the shoulder for the bullet to travel in the path that it did through the body"; that a paraffin test found primer powder on appellant's hand in a manner to indicate he had discharged the gun; that he (the undersheriff) was advised by Doug O'Farrell that he went to the trailer in which the homicide occurred upon hearing a shot and found appellant bending over the body and appellant then told him, "I just shot the sucker," and "they're going to hang me for this"; that appellant made a similar statement to him (the undersheriff); that the gun found at the crime scene belonged to appellant and that it fired the bullet which caused the death; that the trigger pull on the gun was tested and found to be such that it would not have discharged accidentally; and that appellant was intoxicated at the time.

The trial court then asked appellant and his attorney if they had any comment with reference to that which was stated, and they answered in the negative. The trial court asked the deputy county attorney why the State entered into the plea agreement, and the lengthy response was to the effect that while a guilty verdict could possibly result on the original charge, the "more realistic" result would be one of involuntary manslaughter and that justice would be accomplished by the plea bargain at a saving in time and expense. The court then asked the following questions and received the following answers:

"THE COURT: Mr. York, I want to advise you once more of the constitutional rights that you have waived by your guilty plea. I want you to consider them carefully. By entering a plea of guilty, Mr. York, you waive—and by that, I mean, the Court understands you to say, 'I understand my rights, I know what they are, but I don't want to exercise them, I'm going to disregard those rights and plead guilty.' Is that your understanding of 'waiver'?

"DEFENDANT: Yes, sir.

"THE COURT: Thank you, sir. The constitutional rights that you waive by pleading guilty are, the right to a speedy and a public trial, the right to trial by jury, the right to see, hear and question all witnesses, the right to present evidence in your favor and to testify or to remain silent at the trial, the right to have the Judge order into court all evidence and all witnesses in your favor. You waive the right to have a competent lawyer defend you throughout the trial; the right not to be convicted except by proof beyond a reasonable doubt is also waived. And lastly, you waive and lose the right to appeal to the Supreme Court of Wyoming if convicted.

"Now, having those rights in mind and all the others matters that the Court has advised you of, do you still wish to plead guilty?

"DEFENDANT: Yes, sir.

"THE COURT: Mr. York, would you mind telling the Court why you entered into this plea agreement and why you have entered a plea of guilty?

"DEFENDANT: Well, originally, sir, because I was charged with a very serious offense and with the opportunity to lower it made available to me, and I thought it was my advantage to take that. And I think by the evidence that's presented to me, if I was like an outsider looking in on this thing, I think I am probably guilty of this.

"THE COURT: Anything else you wish to say, Mr. York?

"DEFENDANT: No, sir.

"THE COURT: Do you have any questions at all about your rights?

"DEFENDANT: No, I don't, sir."

The foregoing lengthy quotations from the proceedings in which appellant changed his plea refute his contentions of error in connection with such proceedings.

There was a factual basis presented to the court for a plea of guilty. Appellant's argument that there was insufficient evidence of .culpable negligence or criminal neglect in view of appellant's intoxication fails to recognize the impact of the evidence that places the gun in appellant's hand with a trigger pull that will not allow an accidental discharge. A deliberate intent to kill or other specific intent need not be established for the crime of manslaughter. *Dodge v. State*, Wyo., 562 P.2d 303 (1977). Voluntary intoxication is not a defense to a general intent crime. *Brown v. State*, Wyo., 590 P.2d 1312 (1979). Criminal carelessness was established in connection with a manslaughter case under facts similar to this case in *Eagan v. State*, 58 Wyo. 167, 128 P.2d 215 (1942).

The record does not support appellant's argument that the court did not give him an opportunity "to give his side of the story." Appellant was asked several times if he desired to comment on that said. The undersheriff related the story given to him by appellant, and appellant was asked for his comment on it. He had none.

Nor does the record support appellant's argument that the court did not assure itself that appellant possessed an understanding of the law in relation to the facts before accepting the plea of guilty. The fact that the plea was to be to involuntary manslaughter and not to voluntary manslaughter was discussed. Appellant acknowledged that he killed a human being and that it was a result of culpable neglect or criminal carelessness. The elements of the offense and appellant's actions relative thereto were considered during the proceeding in more than one fashion.[3] Appellant's answer to the court's inquiry as to the reason for the change of plea, the recess for consultation by appellant with his attorney concerning such, the reading of the information, and the reasons given by appellant for pleading guilty were sufficient for the purpose of establishing appellant's understanding of the law in relation to the facts.

3. We recommend that the elements of the offense be specifically set forth as such before a plea of guilty is accepted to avoid any potential for misunderstanding in this respect. See Standard 14–1.4 of the American Bar Association Standards for Criminal Justice.

■ Appellant argues that the court "informed the defendant that by pleading guilty he would * * * waive and lose the right to appeal to the Supreme Court of Wyoming if convicted." The discourse in which the statement was made is quoted supra. It reflects that it was in context of an explanation of the trial rights which appellant would lose by virtue of a guilty plea. It referred to the appeal right "if convicted." Its practical effect would be to encourage the appellant to not plead "guilty." Error and prejudice are not established.

■ Appellant's only other contention of error is the failure of the trial court to advise him as required by Rule 15(c)(5), W.R.Cr.P., that the court may ask him questions under oath if he pleads guilty and that the answers may be used against him in a proceeding for perjury or false statement.[4] The trial court did not comply with this requirement of Rule 15(c)(5). While we do not approve of the noncompliance with the rule and again direct strict compliance therewith in the future, *Hoggatt v. State*, Wyo., 606 P.2d 718 (1980), we must note that appellant was not asked any questions under oath and, thus, was not prejudiced by the failure of the trial court to give the admonition required by Rule 15(c)(5).

We have already referred supra to the proposition that erroneous procedure is not subject to reversal if prejudice is not established.

Inasmuch as we do not find reversible error on the issues presented by appellant, the action of the trial court is affirmed.

---

4. The pertinent portion of Rule 15 reads:

"(c) *Advice to defendant.*—Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

* * * * * *

"(5) That if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement."