**Steward Nathan STICE,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. 89–294.**

Supreme Court of Wyoming.

Oct. 29, 1990.

Leonard D. Munker, State Public Defender, and Barbara L. Lauer, Asst. Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., and Richard E. Dixon, Asst. Atty. Gen., for appellee.

Before CARDINE, C.J.*, and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Justice.

Appellant Steward Nathan Stice challenges the propriety of his guilty plea to a charge of attempted voluntary manslaughter under W.S. 6-1-301(a) and W.S. 6-2-105(a)(i). The issues he raises require us to decide whether:

"I. The district court erred in accepting appellant's plea of guilty to attempted voluntary manslaughter because the court did not personally address him concerning all the items required by Rule 15(c), W.R.Cr.P.

* Chief Justice at time of case conference.

"II. The district court erred in finding a sufficient factual basis for the guilty plea as required by Rule 15(f), W.R.Cr. P."

In addition to confronting these two issues, the State raises the following issue:

"I. May the jurisdictional mandate of W.R.A.P. 2.01 be waived when the record is devoid of any indication of ineffective assistance of counsel?"

We hold that this court has jurisdiction of this case and affirm it on its merits.

## FACTS

On August 9, 1988, Stice shot his wife, Annette, in the neck and then shot himself in the head at their Hawk Springs mobile home. He was angry with her for alleged infidelity.

Stice had spent the previous four days in the Albany County jail because his employer had failed to pay fines for the overweight truck he had been driving. Stice had expected his wife to pick him up at Laramie after he was released. When she failed to do so, Stice hitched a ride to Cheyenne where he met Annette. Annette drove Stice to Hawk Springs, and they both drank beer along the way.

When they arrived home, Stice noticed clothing that he believed belonged to some other men scattered about the house. Stice went to the bar at which Annette worked, where he drank part of another beer and told her boss that Annette would be late for work. Annette's boss told Stice that Annette had not been to work all weekend. An angered Stice returned to the mobile home, where a fight ensued. Stice accused Annette of having sexual relations with other men. He retrieved his handgun, struck her with it and then fired it at her but missed. Stice fired a second shot, striking Annette in the neck and penetrating her carotid artery. He then shot himself in the head. Both Annette and Stice survived the gun shot wounds. Stice's self-inflicted wound destroyed part of the right frontal lobe of his brain and his right eye.

Stice was originally charged with attempted second degree murder. At his arraignment on August 31, 1988, Stice pleaded not guilty, not guilty by reason of mental illness or deficiency, and not triable by reason of mental illness or deficiency. The court ordered Stice transferred to the state hospital for a mental examination.

An October 8, 1988 report from the state hospital indicated Stice was competent to stand trial. On Stice's motion, the court ordered a further evaluation. Stice was examined by a neurologist in Cheyenne and a second time at the state hospital. A December 9, 1988 report from the state hospital indicated that he was no longer competent to stand trial because he developed an uncooperative nature about him. Following a competency hearing, the court found Stice unfit to stand trial and ordered him to the state hospital for treatment.

On February 15, 1989, the state hospital reported that Stice had responded to treatment, and it now considered him competent to stand trial. A competency hearing was held in April. The court declined to make a finding as to competency.

On June 23, 1989, the court found Stice competent to stand trial. At the same hearing, Stice was allowed to change his plea to guilty of attempted voluntary manslaughter. Following questioning of Stice by his attorney, the prosecutor, and the court and the establishment of a factual basis for a guilty plea, the court accepted the plea. More details of the conduct of the hearing will be related below as necessary. The court sentenced Stice to a term of 15 to 18 years in prison.

## DISCUSSION

*Appellate Jurisdiction*

The court entered its judgment and sentence on August 14, 1989. Stice filed his notice of appeal on November 24, 1989. The State maintains that this delay should result in a denial of jurisdiction of the appeal. The State bases its assertion on W.R.A.P. 2.01, which states in part:

"An appeal, civil or criminal, permitted by law from a district court to the Supreme Court, shall be taken by filing a notice of appeal with the clerk of the district court within fifteen (15) days from entry of the judgment or final order appealed from and concurrently serving the same in accordance with the provisions of Rule 5, W.R.C.P., unless a different time is provided by law, except that: (1) upon a showing of excusable neglect the district court in any action may extend the time for filing the notice of appeal not exceeding fifteen (15) days from the expiration of the original time prescribed herein, provided the application for extension of time is filed and the order entered prior to the expiration of thirty (30) days from entry of judgment or final order appealed from * * *."

Stice made a motion in the trial court for leave to file a late appeal in November. However, the trial court declined to act on the motion, stating that it lacked the authority to act.

 Allowing an untimely first appeal as of right in a criminal case is sometimes warranted in order to prevent a denial of due process and ensure effective assistance of counsel. *Price v. State*, 716 P.2d 324, 327 (Wyo.1986). In *Price*, the appellant failed to file his notice of appeal within the requisite time after final judgment was entered. Instead, he appealed nearly a year later when an order was entered transferring him from the state hospital to the penitentiary. Relying upon *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985), we allowed Price his appeal. 716 P.2d at 327. Circumstances in Stice's case warrant we allow his appeal.

When Stice entered his guilty plea on June 23, 1989, the court was prepared to pronounce sentence. The court, however, ordered a presentence investigation in part to allow time for Stice to undergo reconstructive surgery, needed as a result of his self-inflicted wound, before being transferred to the state penitentiary. When Stice was sentenced on August 11, 1989, this surgery had yet to be performed, some of which was scheduled to be performed in Scottsbluff, Nebraska on August 19. Correspondence from Stice to his counsel and

from his counsel to the State Public Defender indicate that Stice wished to appeal, but his counsel thought Stice lacked any basis for appeal. Stice's appellate counsel has raised two important issues. We will not deny Stice his right to due process due to counsel's oversight. In order to ensure that Stice be afforded effective assistance of counsel, we will decide Stice's issues on their merits.

*Acceptance of the Plea*

At the change of plea hearing, after the court found Stice competent to proceed, Stice's counsel, Leonard Munker, informed the court of a plea agreement and Stice's desire to plead guilty to attempted voluntary manslaughter. The court addressed Stice, asking him how he pleaded to the charge, and Stice responded he pleaded guilty. The court then had Stice take the witness stand, and Munker questioned him.

Munker asked Stice if he understood the maximum penalties and advised him that he had the right to go to trial by jury of twelve which must reach an unanimous verdict; that he had a right to counsel if he went to trial; that he had a right to call witnesses on his behalf; that he had a right to confront witnesses against him; and that he had a right to testify himself if he wished. Stice indicated he understood those rights. Munker asked him if he had conferred with an attorney. Stice answered he had conferred with Munker and another attorney. Munker then asked Stice through a series of questions to establish that he understood he waived those rights if he pleaded guilty. Stice indicated he understood. Munker then questioned Stice concerning the facts relating to the shooting.

When Munker concluded questioning Stice, the court stated:

"I have no problem with what you did. You did an excellent job, but the statute requires that the Court do this, personally, insofar as Rule 15 is concerned, so I am going to have to quickly go over that which you did, and it is certainly no reflection, Mr. Stice, upon the ability of your counsel. He did just exactly what I

would have done or will do, but a better job, but we will do that again."

W.R.Cr.P. 15 states in pertinent part:

"(c) *Advice to defendant.*—Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

"(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

"(2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

"(3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

"(4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

"(5) That if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement.

"(d) *Insuring that the plea is voluntary.*—The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo

contendere results from prior discussions between the attorney for the state and the defendant or his attorney.

\* \* \* \* \* \*

"(f) *Determining accuracy of plea.*— Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

After allowing the prosecutor to cross-examine Stice, the court questioned him. Upon questioning by the court, Stice indicated he understood the nature of the original charge and the penalty; that he did not have to plead guilty to a reduced charge and instead could stand trial for the original charge; and that, although he retained his right to counsel, his guilty plea resulted in a waiver of his right to a trial by jury, to confront witnesses, to have witnesses testify in his behalf and not to testify against himself. Stice then indicated that he had not been coerced into entering the guilty plea and was entering the plea voluntarily. The court failed to question Stice about his knowledge of the maximum penalty for attempted voluntary manslaughter, as required by W.R.Cr.P. 15(c)(1), a crime which does not carry a mandatory minimum penalty.

We have long held that strict compliance with W.R.Cr.P. 15 is mandatory. *Duffy v. State,* 789 P.2d 821, 834 (Wyo.1990); *Cardenas v. Meacham,* 545 P.2d 632, 635 (Wyo.1976). We reserved however, until the proper case confronted us, to discuss the question of whether the harmless error doctrine applies to deviations from the requirements of W.R.Cr.P. 15. *Crawford v. State,* 701 P.2d 1150, 1153 (Wyo.1985). That case confronts us now.

<span style="background:black"></span> Any error in accepting a guilty plea under W.R.Cr.P. 15 must be harmless beyond a reasonable doubt because such an error implicates a denial of constitutional rights. *Crawford,* 701 P.2d at 1153; *Campbell v. State,* 589 P.2d 358, 367 (Wyo. 1979). The court erred in not questioning Stice directly about his knowledge of the maximum penalty for an attempted voluntary manslaughter conviction. However, in response to a non-leading question by Munker, Stice was able to tell the court that the maximum penalty for the crime was twenty years in prison. Stice repeated this understanding when Munker followed up with a leading question. It is clear from the record that Stice understood the consequences of his guilty plea.

The opinion concurring in the result proposes that we adopt the position of the State from its brief that

"error cannot be predicated upon the defendant's understanding of sentencing options when, at the time of his guilty plea, the defendant affirms on the record his precise understanding of possible sentences by describing those sentences in response to a non-leading question from his own attorney."

The suggestion is that we adopt a "no-error rule" in the special situation in which the defendant's own attorney informs him in open court of the maximum and minimum penalty. Such a rule finds no support anywhere in the law. If adopted, the rule would provide that *it is not error* for the judge, when accepting a guilty plea, to fail to

"address the defendant personally in open court and inform him of, and determine that he understands, the following:

"(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." W.R.Cr.P. 15.

The rationale for the proposed rule is that the judge need not satisfy the obligation imposed by W.R.Cr.P. 15 where the defendant knows the maximum and minimum penalty for the crime to which he pleads because there is no error. The proposed rule differs from the opinion of the court as written, in that the opinion of the court holds it error for the court to fail to advise the defendant of the maximum and minimum penalty, as required by W.R.Cr.P. 15, but holds that in the circumstances of this case the error is harmless. The harmless error rule finds substantial support in existing case law. Perhaps something is

gained by avoiding harmless error and adopting a special rule for this case only. We are unable to identify any efficacy in the proposed rule or the benefits to be derived therefrom.

■ We do not approve of the trial court's failure to comply with the requirements of the rule and direct strict compliance in the future. *York v. State*, 619 P.2d 391, 398 (Wyo.1980). However, the purposes behind the requirements of the rule were served. Those purposes are to assist the judge in making the constitutionally required determination that a defendant's plea is truly voluntary, to produce a complete record at the time the plea was entered of the factors relevant to this voluntariness determination, and to enable more expeditious disposition of the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas. *Britain v. State*, 497 P.2d 543, 545 (Wyo.1972). Stice was not prejudiced by the deviation. *Cf. York*, 619 P.2d at 398. We hold that the trial court's error was harmless beyond a reasonable doubt.

■ Stice also contends that the court failed to adequately inform him of the nature of the charge to which he was pleading. Before accepting the plea, the court explained the charge to Stice with a summary of the statute and the date and location of where the shooting occurred. Munker also questioned Stice about the nature of the crime of voluntary manslaughter.

■ We have no hard and fast rule regarding how much information is necessary to explain the nature of a charge to a defendant. The actions required of the district court in any particular case depend largely on whether elements of the offense are difficult to understand, considering the complexity to the average person with no legal training and the sophistication of the individual defendant. *Peper v. State*, 768 P.2d 26, 30 (Wyo.1989). Viewing the hearing as a whole, *id.* we find the court sufficiently described the charge to Stice, who demonstrated an understanding of the nature of the offense.

*Factual Basis*

One way to establish the factual basis for the plea as required under W.R.Cr.P. 15(f) is to have the accused describe the conduct that gave rise to the charge. Where this does not yield the desired result, something more obviously needs to be done. *Sanchez v. State*, 592 P.2d 1130, 1135 n. 6 (Wyo.1979). When the examination of Stice failed to provide the factual basis, the prosecutor had a Goshen county undersheriff testify as to statements made to him days after the shooting from both Stice and the victim. The deputy sheriff testified that, according to those statements, on August 9, 1988, at the Stices' mobile home, Stice was angered when he returned to the home, accused Annette of infidelity, struck her with the gun, fired a shot into the wall, asked her if she had been cheating on him, and then shot her in the neck. The deputy further testified as to the number of bullets fired from Stice's gun and the proximity from where they were fired to where Annette was wounded. Stice offered no objection to these statements nor did he attempt to refute any of this through cross-examination. *E.g., York*, 619 P.2d at 397.

■ Voluntary manslaughter entails the taking of a life voluntarily in a sudden heat of passion, completely free of express, implied, constructive or legal malice, but committed without a legal excuse, privilege or justification. *Jahnke v. State*, 692 P.2d 911, 919 (Wyo.1984), quoting from *State v. Helton*, 73 Wyo. 92, 276 P.2d 434, 442 (1954); W.S. 6–2–105(a)(i). To establish the factual basis here for attempted voluntary manslaughter, the record must show that Stice, with the intent to commit manslaughter, took a substantial step towards the commission of the crime. W.S. 6–1–301(a)(i). The record shows that Stice retrieved a handgun and angrily fired it at his wife. These circumstances establish that Stice possessed the intent required here. *Lopez v. State*, 788 P.2d 1150, 1153 (Wyo.1990). The fact that he fired and struck her establishes that Stice took a substantial step toward the commission of

voluntary manslaughter. A factual basis for the plea was established.

We hold that the trial court erred by failing to ask Stice personally about his understanding of the maximum penalty for the charge to which he was pleading guilty. We further hold the error harmless beyond a reasonable doubt inasmuch as Stice, himself, correctly advised the court that he knew the maximum penalty for manslaughter to be 20 years.

Affirmed.

URBIGKIT, C.J., filed an opinion concurring in the result in which GOLDEN, J., joined.

URBIGKIT, Chief Justice, concurring in the result, with whom GOLDEN, Justice, joins.

I concur in affirming the decision and the sufficiency of the trial court proceedings for proper entry of the guilty plea. However, I would not agree to reach that result by creating a harmless error disconnect for attachment to our established strict compliance standard for application of W.R.Cr.P. 15. Harmless error and strict compliance cannot be mechanically or logically operated together. They are intrinsically antagonistic and mutually exclusive concepts. This court, by present opinion, goes even further than suggested or requested by the State, which in brief announced:

> It is important to understand that the State, in advocating for resolution of the sentencing question pursuant to the holding in *Worthen v. Meachum, supra* [842 F.2d 1179 (10th Cir.1988)], eschews argument for adoption of a so-called "harmless error" rule. *Crawford v. State,* Wyo., 701 P.2d 1150 at 1153 (1985). It is the position of the State that error cannot be predicated upon the defendant's understanding of sentencing options when, at the time of his guilty plea, the defendant affirms on the record his precise understanding of possible sentences by describing those sentences in response to a non-leading question from his own attorney.

I agree with the posture espoused in that statement by the State in behalf of affirming the action of the trial court. There is here neither the need for nor am I willing to add any harmless error attachment to the present W.R.Cr.P. 15 mechanism. *Smallwood v. State,* 748 P.2d 1141 (Wyo. 1988); *Cardenas v. Meacham,* 545 P.2d 632, 635 (Wyo.1976).