Steward Nathan **STICE**, Petitioner,

v.

Duane **SHILLINGER**, Warden of the Wyoming State Penitentiary, and the Attorney General of the State of Wyoming, Respondents.

No. 92–CV–0157–B.

United States District Court,
D. Wyoming.

Nov. 29, 1993.

Steward Nathan Stice, pro se.

*Office of the Atty. Gen., State of Wyoming, Cheyenne, WY.

### ORDER DENYING PETITIONER'S SECOND PETITION FOR A WRIT OF HABEAS CORPUS

BRIMMER, District Judge.

This matter comes before the Court on Petitioner's Second Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (1988). The Court, having considered the materials on file, and being fully advised in the premises, FINDS and ORDERS as follows:

### Background

Petitioner was charged with attempted second degree murder stemming from an incident when he allegedly shot his wife in the neck. His allegation that he was not competent to stand trial was rejected and he was found fully competent. Petitioner subsequently opted to plead guilty to attempted voluntary manslaughter and the district court for the Eighth Judicial District in Goshen County sentenced the petitioner to fifteen (15) to eighteen (18) years imprisonment.

The petitioner appealed his sentence to the Wyoming Supreme Court, alleging that the trial court failed to explain the consequences of his guilty plea to him, in violation of Rule 15(c) of the Wyoming Rules of Criminal Procedure.[1] He also alleged that there was an insufficient factual basis for the plea.

Although the state supreme court concluded that the trial court did in fact err in failing to advise the petitioner of the maximum penalty permitted under the law for the crime to which he pled, the court found that the error was harmless beyond a reasonable doubt. *See Stice v. State,* 799 P.2d 1204, 1208–09 (Wyo.1990). This latter conclusion was based on the fact that the petitioner stated in open court that he was aware that the maximum penalty available was twenty (20) years. The state supreme court also rejected the petitioner's claim that there was an inadequate factual basis for the plea. *See id.* at 1209.

* No appearance entered on behalf of Respondents because the Court summarily dismissed the case pursuant to Rule 4 of the Rules governing Section 2254 cases in federal court.

1. Rule 15(c), which is presently Rule 11(b)(1), states in relevant part, that:

    (b) before accepting a plea of guilty ... to a felony ... the court *must address the defendant personally in open court* on the record and in the presence of counsel, inform the defendant of, and determine that the defendant understands, the following:

       (1) the maximum possible penalty provided by law....

(emphasis added). For purposes of simplicity, the Court will refer to this as Rule 15(c) for the remainder of this order.

The petitioner subsequently sought a petition for a writ of habeas corpus in this Court, alleging that he entered into a guilty plea without a full understanding of the maximum penalty permitted under the law. He also alleged that he did not receive "equal treatment" by the state supreme court.

Then–Judge Alan B. Johnson dismissed petitioner's second claim on the ground that the petitioner had failed to exhaust his state remedies since that claim was never "fairly presented" to the state courts. *See Hurd v. Mondragon,* 851 F.2d 324, 328 (10th Cir. 1988); *Osborn v. Shillinger,* 639 F.Supp. 610, 613–14 (D.Wyo.1986), *aff'd,* 861 F.2d 612 (10th Cir.1988); *see also Anderson v. Harless,* 459 U.S. 4, 6–8, 103 S.Ct. 276, 278–79, 74 L.Ed.2d 3 (1982). Following the rule of total exhaustion set forth in *Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982), Judge Johnson then dismissed petitioner's first claim as well on the grounds that the petition was a mixed petition.[2] The petition was therefore dismissed on June 25, 1992 without prejudice.

Exactly three weeks after his first petition was dismissed, the petitioner filed his second petition seeking a writ of habeas corpus from this Court. In that petition, which is presently pending, the petitioner raises only one claim: that his conviction was in violation of due process because he was improperly instructed on the consequences of his guilty plea. In essence, the petitioner has foregone his second claim and restated his first claim in order to have this Court decide the merits of that claim.

### Discussion

#### A. Background

The petitioner has exhausted his available remedies with respect to the sole claim in the present petition. Therefore, the Court can, and will, reach the merits of that claim. The petitioner contends that his plea was in violation of due process because the sentencing court failed to abide by the rule of "strict compliance" applicable to Rule 15(c) of the Wyoming Rules of Criminal Procedure. *See, e.g., Stice,* 799 P.2d at 1208 (citing *Duffy v.*

*State,* 789 P.2d 821, 834 (Wyo.1990); *Cardenas v. Meacham,* 545 P.2d 632, 635 (Wyo. 1976)).

Prior to its decision in *Stice,* the Wyoming Supreme Court had never decided the question of whether a deviation from the requirements of Rule 15(c) was subject to harmless error analysis. *See Crawford v. State,* 701 P.2d 1150, 1153 (Wyo.1985) (noting that this was an open question and reserving ruling on it until a proper case was presented).

In *Stice,* the Court was presented with an opportunity to rule on that precise question. *See Stice,* 799 P.2d at 1208. The Court did rule on that question, concluding that this error was indeed subject to harmless error analysis. *Id.* On the facts of the case before it, the Court concluded that the error was in fact harmless.

#### B. The Merits of the Present Petition

The petitioner has asserted essentially two claims: first, that the trial court erred under Rule 15(c), and second, that the error was not harmless beyond a reasonable doubt.

As to the first claim, the answer is apparent. The Wyoming Supreme Court clearly and unequivocally found that the trial court failed to comply with Rule 15(c) and no evidence has been presented to the contrary. *See Stice,* 799 P.2d at 1208–09. Thus, this Court, in the present procedural posture of this case, must now determine whether the record supports a finding of harmless error.

Prior to 1919, when Congress adopted § 269 of the Judicial Code, 28 U.S.C. § 391, the "harmless error statute," *any* error committed during the course of a trial warranted reversal. In 1919, after prolonged debate, Congress changed this result when it passed the harmless error statute. *See generally Kotteakos v. United States,* 328 U.S. 750, 757–66, 66 S.Ct. 1239, 1244–49, 90 L.Ed. 1557 (1946). Although Congress amended that statute in 1949, which is now codified at 28 U.S.C. § 2111 (1988), by modifying some of the language, the critical parts of the statute remained unaltered.

---

**2.** The *Rose* rule requires a federal court to dismiss a petition for a writ of habeas corpus that

contains both exhausted and unexhausted claims. *See Rose,* 455 U.S. at 522, 102 S.Ct. at 1205.

Section 2111 provides that an error requires reversal only if it "had substantial and injurious effect or influence in determining the jury's verdict." *See, e.g., United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986); *Kotteakos,* 328 U.S. at 757–66, 66 S.Ct. at 1244–49. On its face, however, the statute does not purport to "distinguish[ ] between federal constitutional errors and errors of state law or federal statutes or rules." *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967).

■ In the landmark decision in *Chapman,* the Supreme Court drew a distinction between constitutional error and non-constitutional error for purposes of determining harmlessness *vel non,* concluding that there may be:

> some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring automatic reversal of the conviction.

*Id.* at 22, 87 S.Ct. at 827. The Court in *Chapman,* a case on direct review, rejected the argument that the standard set out in § 2111 should be applied to claims of constitutional harmless error, noting that a higher standard was necessary. The Court, relying on *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–31, 11 L.Ed.2d 171 (1963), thus fashioned the "harmless beyond a reasonable doubt" standard for assessing whether a constitutional error was harmless. The Court was also careful to note that some constitutional errors were "so basic to a fair trial that their infraction can never be treated as harmless error ..." *Chapman,* 386 U.S. at 23, 87 S.Ct. at 827 (footnote omitted).[3] Since the decision in *Chapman,* it has been well-established law that constitutional errors are, like non-constitutional errors, subject to harmless error analysis. *See Chapman,* 386 U.S. at 21–22, 87 S.Ct. at 826–27.

■ In the present case, the Wyoming Supreme Court, the final authority on the interpretation of the Wyoming Rules of Criminal Procedure, declared that Rule 15(c) errors are subject to harmless error analysis. *See Stice,* 799 P.2d at 1208. The Wyoming Supreme Court also stated this error was of constitutional significance, stating that "[a]ny error in accepting a guilty plea under [Rule 15(c) ] must be harmless beyond a reasonable doubt because such an error implicates a denial of constitutional rights." *Stice,* 799 P.2d at 1208 (citations omitted).[4] That Court

---

3. In *Arizona v. Fulminante,* 499 U.S. 279, 280–81, 111 S.Ct. 1246, 1249, 113 L.Ed.2d 302 (1991), a recent pronouncement on harmless error, the Court noted that constitutional errors should first be characterized as either "trial" error or "structural" error. The Court stated that trial errors, which were defined as errors that "occur[ ] during the presentation of the case to the jury" are amenable to harmless error analysis because their impact may be "quantitatively assessed in the context of other evidence presented ..." *Id.* at 280, 111 S.Ct. at 1249. In contrast, structural errors were never subject to harmless error analysis because their presence *per se* infects the entire trial process. *Id.* at 289–90, 111 S.Ct. at 1254. The Court indicated that a denial of the right to counsel under *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) would be an example of a structural error and would therefore never be amenable to harmless error analysis.

    This Court will adopt the conclusion of the Wyoming Supreme Court that the error in this case is subject to harmless error analysis without making an independent determination of that fact. The Court would be inclined to agree that this error, albeit not a "trial" error, since it did not occur "during the presentation of the case to

the jury," *Fulminante,* 499 U.S. at 280, 111 S.Ct. at 1249, but during a change of plea hearing, would nonetheless be more akin to a trial error and therefore subject to harmless error analysis.

4. The Court accepts the conclusion of the Wyoming Supreme Court that the alleged error in this case is of constitutional magnitude even though it involved a violation of a rule of procedure. Based on this conclusion, the Wyoming Supreme Court applied the more rigorous *Chapman* standard, which benefitted the petitioner, for assessing whether the error was harmless. Thus, its conclusion that the error was harmless under *Chapman* necessarily implies that the error would have been harmless even if the error in question was declared to be a non-constitutional error since the latter standard is less rigorous.

    *If* the Wyoming Supreme Court had not applied *Chapman* and used a less demanding standard, then this Court would be faced with a difficult question and a determination as to whether this error was in fact of constitutional magnitude would be necessary. This issue need not be resolved, however, since the application of *Chapman* did not prejudice the petitioner.

then concluded that on the facts of the appeal presented to it, the error was harmless. *Id.* at 1208–09.

Thus, given that the error in this case is subject to harmless error analysis, the question presented is by what standard does this Court, on collateral review of that conceded error, assess whether that error was harmless. This question was answered by the United States Supreme Court in its recent decision in *Brecht v. Abrahamson*, 507 U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

The *Chapman* harmless error standard was developed in a case involving direct review of a criminal conviction. Prior to *Brecht*, the Supreme Court had assumed, but never actually decided,[5] whether the *Chapman* standard also applied on federal collateral review of a trial error. *Brecht* reached that question and the Court, noting "[t]he principle that collateral review is different from direct review resounds throughout our habeas jurisprudence[,]" held that the *Chapman* standard should not be applied on collateral review. *Brecht*, 507 U.S. ——, 113 S.Ct. at 1719 (citations omitted). In its place, the Court adopted the *Kotteakos* standard, which had previously been applied only in the context of non-constitutional error, for assessing whether a constitutional error was harmless on federal collateral review. *Id.* at ——, 113 S.Ct. at 1722. Thus, it is clear that after *Brecht*, this Court must apply the less rigorous *Kotteakos* standard to review a claim of harmless error on federal collateral review.[6] This Court must therefore make an independent determination as to whether the trial court's error in this case was harmless under the *Brecht* standard. *Id.* at ——, 113 S.Ct. at 1722. This Court's inquiry is limited to assessing whether the alleged failure of the trial court to comply with Rule 15(c) was a harmless constitutional error. For reasons set forth below, the Court concludes that it was, and therefore, the petition for relief must be denied.

■■■ At the change of plea hearing, the trial court erred by not specifically asking the petitioner whether he understood the maximum possible penalty for the charge to which he was pleading guilty. While this is an error under Rule 15(c), the record also indicates that the petitioner already had personal knowledge of that maximum penalty. In response to a non-leading question by his attorney, petitioner told the Court that he understood, correctly so, that the maximum penalty for the crime of attempted voluntary manslaughter, to which he was pleading guilty, was twenty years imprisonment. Moreover, petitioner's attorney followed up this response with a leading question confirming that the petitioner understood that the maximum period of imprisonment was twenty years. Thus, the Wyoming Supreme Court concluded that "[i]t is clear from the record that [petitioner] understood the con-

---

5. As the Court noted in *Brecht*:

> *Chapman* reached this Court on direct review, as have most of the cases in which we have applied its harmless-error standard. Although we have applied the *Chapman* standard in a handful of federal habeas cases (citations omitted), *we have yet squarely to address its applicability on collateral review* (footnote omitted).

*Brecht*, 507 U.S. ——, 113 S.Ct. at 1718.

6. Before analyzing the harmlessness of the error, the Court notes an internal inconsistency in the *Brecht* opinion itself. Under traditional harmless error analysis, the state bore the burden of proving that an error was harmless. *See Brecht*, 507 U.S. ——, 113 S.Ct. at 1717. Chief Justice Rehnquist's opinion for the Court in *Brecht*, however, cited *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986), for the proposition that the *petitioner* bears the burden of proving that the error resulted in "actual prejudice" to him.

Justice Stevens' concurrence in *Brecht* picked up on this point, and he stated that as he understood the majority's opinion, of which he was a member, the holding did not alter the requirement that the state bears the burden of proving that an error was harmless. *See Brecht*, 507 U.S. at ——, 113 S.Ct. at 1723 ("Because [the *Kotteakos* standard accords with the statutory rule for reviewing other trial errors that affect substantial rights; *places the burden on prosecutors to explain why those errors were harmless* ... I am convinced that our answer [adopting *Kotteakos* on collateral review] is correct.") (Stevens, J., concurring) (emphasis added).

This Court does not need to reconcile this apparently conflicting guidance, however, since the Court will give the petitioner the benefit of the doubt and assume that the traditional approach applies and that the state retained the burden of proving the harmlessness of the error without the need for the petitioner to demonstrate prejudice.

sequences of his guilty plea," *Stice*, 799 P.2d at 1208, and thus concluded that the error was harmless beyond a reasonable doubt.

It is worth noting that the United States Supreme Court has stated that "[s]tate courts are fully qualified to identify constitutional error and evaluate its prejudicial effect on the trial process ... and state courts often occupy a superior vantage point from which to evaluate the effect of trial error." *Brecht*, 507 U.S. at ——, 113 S.Ct. at 1721 (citation omitted). Although the conclusion of the Wyoming Supreme Court that the trial court's error was harmless beyond a reasonable doubt is not binding on this Court, the reasoning and analysis used to reach that conclusion is both relevant and persuasive to this Court. The Wyoming Supreme Court also noted that the "purposes behind the requirements of [Rule 15(c)] were served." *Stice*, 799 P.2d at 1209. A combination of that finding, which is entitled to deference by this Court, and this Court's independent assessment of the record in this case, leads this Court to conclude that the trial court's error did not substantially alter or affect the outcome of the plea hearing and therefore, the trial court's error was harmless under *Brecht.*

**THEREFORE**, it is

**ORDERED** that petitioner Stice's Petition for a Writ of Habeas Corpus be, and the same hereby is, **DENIED.**